UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY A. SELLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-CV-217 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Timothy Sells believes that he is unable to work due to chronic back pain. However, the Commissioner of Social Security denied his claim for disability benefits, precipitating this appeal. For the following reasons, the Court finds that the reasons offered for discounting Mr. Sells' testimony about his limitations and for attaching little weight to the opinions of his treating physician were inadequate, so the Court reverses the Commissioner's decision and remands for further proceedings.

### I. FACTUAL BACKGROUND

Timothy Sells injured his back while at work in 2008, and he exacerbated his condition in 2011 while trying to shovel snow. He suffers severe chronic pain in his lower back, primarily on the right side, and he was diagnosed with degenerative disk disease of the lumbar spine. He began seeking treatment for his back pain from Dr. Cynthia Heckman-Davis in January 2011. He began with conservative treatment of ibuprofen, muscle spasm relievers, and low back exercises. When that did not work, he progressed through a number of additional treatments, including physical therapy, epidural injections, and a TENS unit, none of which offered meaningful relief. He also consulted with two different surgeons, both of whom concluded that surgery would not

have relieved his pain. Thus, Mr. Sells treated his pain with narcotic pain killers. To maintain his prescription for those medications, he had to see his doctor regularly and undergo drug tests, and Dr. Heckman-Davis consistently noted that Mr. Sells was compliant with his medications. Though the medication offered some pain relief, Mr. Sells asserts that he is still unable to sit or stand for more than ten or twenty minutes at a time before having to change positions or lay down to relieve his pain. Dr. Heckman-Davis offered a number of similar restrictions as to Mr. Sells' functional capacity.

The ALJ concluded, however, that Mr. Sells was not so limited. Though she found that Mr. Sells' degenerative disk disease was a severe impairment, the ALJ found that he could still perform "light work," with the condition that he could sit or stand for up to an hour at a time, after which he would have to be able to alternate positions for ten minutes, among various other limitations. Based on testimony from a vocational expert, the ALJ found that a person with this residual functional capacity would not be able to perform Mr. Sells' past work. However, she found that other jobs existed that Mr. Sells would be able to perform, so she found that he was not disabled. The appeals council denied Mr. Sells' request for review, making the ALJ's decision the final decision of the Commissioner. Mr. Sells filed this action seeking review of the Commissioner's decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

3

months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's Residual Functional Capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

In contesting the ALJ's decision, Mr. Sells argues that the ALJ erred in discounting the credibility of his testimony about the limitations caused by his back pain, and in giving little

weight to the opinions of his treating physician. Mr. Sells argues that as a result of these errors, the ALJ adopted a residual functional capacity analysis that did not fully account for his limitations, and that the ALJ thus failed to meet her burden at step five of showing that there are jobs that a person with his limitations could perform. As to the credibility analysis, courts "defer to an ALJ's credibility finding that is not patently wrong," but "an ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015)). "'An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding.'" *Id.* (quoting *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014)).

At the hearing, Mr. Sells testified about his limitations due to his back pain, including that he could stand for ten to fifteen minutes at most before having to sit down, and that he could likewise sit for up to fifteen minutes before having to lay on his side to relieve the pain on his right side. (R. 53). He also testified that he can lift about seven or eight pounds, but that lifting with his right hand causes pain in his back. *Id.* In addition, he testified that he has fallen a few times, so he typically needs to use a cane to walk or stand. The ALJ found that Mr. Sells' testimony about the severity of these limitations was not entirely credible, and adopted a residual functional capacity under which Mr. Sells could sit and stand for up to an hour at a time and up to six hours each out of an eight-hour workday, and could lift twenty pounds occasionally and ten pounds frequently. The ALJ offered two reasons for discrediting Mr. Sells' testimony, but neither reason is justifiable.

The ALJ first stated that Mr. Sells "has had essentially conservative treatment, with surgery not being advised for his condition." (R. 29). However, this is not a case where potential

5

treatment methods are available, such that a claimant's decision not to pursue that treatment is an indication that his limitations are not as severe as he claims. To the contrary, the record shows that Mr. Sells exhaustively pursued every form of treatment that was suggested to him. Mr. Sells began by taking ibuprofen and muscle spasm relievers and doing low back exercises, but that did not help. He then consulted with a surgeon, who concluded that "surgery is not indicated and fusion surgery for his problem typically yields poor results." (R. 382; *see also* R. 340 ("[T]here is nothing from a surgical perspective I can help him with.")). Mr. Sells next completed a course of physical therapy, which did not help. He also received two epidural injections in his back, but they offered relief for only about an hour. He then used a TENS unit, which likewise offered limited relief. Mr. Sells further sought a second opinion as to whether surgery would be an option, but the second doctor agreed that surgery would not offer relief. Absent another viable method of treatment, Mr. Sells was prescribed narcotic pain killers to treat his pain. To maintain his prescription, he had to see his doctor regularly and undergo drug tests, and his doctor consistently noted that he was compliant with his treatment.

In short, as Dr. Heckman-Davis noted, Mr. Sells "has tried all options for remediation of the pain."[1] (R. 394). While Mr. Sells' treatment may have been "conservative" in the sense that he did not undergo surgery, that was only because surgery would not have helped. Thus, Mr. Sells' credibility cannot reasonably be discounted because he failed to pursue invasive treatments that would not have improved his condition. *See Thomas v. Colvin*, 534 F. App'x 546, 551–52

---

[1] As Dr. Heckman-Davis summarized in her treatment notes: "Neurosurgery says not a surgery case . . . , he failed course of PT [physical therapy], has seen 2 pain management docs. Dr. [G]raham tried 2 epidurals only helped for about 1 hour. Dr. [P]ai felt further epidurals would not help. [Mr. Sells] got no relief from 6 weeks of PT. . . . TENS unit tried 11-9-12, some improvement temporary only. [Mr. Sells] is not considered a surgical candidate for fusion or disc replacement at this time." (R. 394).

(7th Cir. 2013) (rejecting an ALJ's explanation that the claimant's "conservative treatment" was not what "one would expect" for someone with disabling pain, where the claimant had made "continuous efforts" to treat her back pain).

Second, the ALJ noted that "the record does not indicate that a cane was ever prescribed by a medical care provider." (R. 29). However, the Court fails to see how that provides a basis for disbelieving Mr. Sells' testimony about the extent of his pain or limitations. First, even though Mr. Sells was never given a prescription for a cane, Dr. Heckman-Davis noted that Mr. Sells "requires a cane in the right hand," (R. 349), and Mr. Sells testified that Dr. Heckman-Davis told him that he should use a cane if it would help him (R. 55). More importantly, a patient does not need a prescription in order to obtain and use a cane. The fact that Mr. Sells had not been given a prescription for a cane is thus not a valid basis for disbelieving his testimony, as the Seventh Circuit has noted on multiple occasions. *Eakin v. Astrue*, 432 F. App'x 607, 613 (7th Cir. 2011) ("First, the ALJ unreasonably faulted [the claimant] for not obtaining a prescription for her cane. . . . [T]he fact that an individual uses a cane not prescribed by a doctor is not probative of her need for the cane in the first place."); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription . . . ."); *Terry v. Astrue*, 580 F.3d 471, 477–78 (7th Cir. 2009) (noting that the claimant's "use of a walker, even if a doctor did not recommend it, is not on its own enough to make her testimony regarding her pain unbelievable").

The Commissioner argues that the ALJ's credibility finding was also supported by other factors, such as Mr. Sells' daily activities and normal medical findings, but the decision does not appear to rest on those factors, and the Court cannot affirm the decision for reasons not provided

7

by the ALJ. In addition, Mr. Sells' daily activities are not inconsistent with the limitations to which he testified, and an "'ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it,'" *Vanprooyen v. Berryhill*, No. 16-3653, 2017 WL 3097865, at *4 (7th Cir. July 21, 2017) (quoting *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)), so those would not be valid bases for the credibility finding anyway. Accordingly, the Court finds that the ALJ's credibility finding is not supported by substantial evidence, so this case must be remanded for the ALJ to reconsider and offer an adequate explanation for her credibility finding.

Mr. Sells also argues that the ALJ erred in failing to give controlling weight to the opinions of his treating physician, Dr. Heckman-Davis. "A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). "An ALJ who declines to give controlling weight to the opinion of a treating physician must offer 'good reasons' that are 'sufficiently specific' in explaining what weight, if any, she assigned it." *Eakin*, 432 F. App'x at 612; *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Here, Dr. Heckman-Davis gave multiple opinions as to Mr. Sells' condition and limitations over the course of her treatment. Though this case must be remanded for the reasons just discussed, a number of those opinions are worth noting.[2]

Dr. Heckman-Davis offered a series of opinions in 2015, in the months prior to the hearing before the ALJ. In February 2015, she wrote a letter outlining the course of Mr. Sells' treatment, her recent examination findings, and her opinions as to his functional limitations. (R.

---

[2] As the Commissioner correctly notes, the ALJ was not required to accept Dr. Heckman-Davis' statements that Mr. Sells is "disabled," as that is a conclusion reserved for the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(1).

454). In June 2015, she completed a form setting forth Mr. Sells' functional limitations, and the following month she wrote another letter outlining the course of Mr. Sells' treatment and noting that she does "not expect improvement in [Mr. Sells'] back condition in the future, unless new surgical techniques are devised for his particular problem." (R. 460–65). The ALJ granted "little" weight to each of these opinions on the sole ground that "there are no contemporaneous office treatment notes to support those opinions." (R. 28). First, however, the February 2015 letter recounted each of Dr. Heckman-Davis' findings from the examination she had performed earlier that week. There is no reason to doubt the accuracy of those details, such that the ALJ would need to review the treatment notes themselves, so the fact that Dr. Heckman-Davis did not also attach the treatment notes from that visit is not a "good reason" for discounting this opinion.

Second, more broadly, the reason that treating physicians' opinions are typically given preference is that those physicians gain a familiarity with the claimant's conditions and limitations over the course of their treatment, and do not have to rely solely on the findings at a single examination. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Clifford*, 227 F.3d at 870. Thus, whether or not Dr. Heckman-Davis had examined Mr. Sells contemporaneously with these opinions, and whether or not she provided the treatment notes from those examinations, she was still presumably drawing on her familiarity with Mr. Sells' condition that she gained from treating him over multiple years. The ALJ also had access to the treatment records over that time to allow her to evaluate the basis for Dr. Heckman-Davis' opinions. Accordingly, the Court does not find that the lack of "contemporaneous treatment records" to accompany each of these opinions constitutes a good reason for discounting these opinions by a treating physician.

Dr. Heckman-Davis also offered a number of opinions in 2014. She completed residual functional capacity questionnaires in March and June, opining that Mr. Sells could sit, stand, or

9

walk for up to ten minutes at a time; that he could sit intermittently for up to four hours out of an eight-hour workday; that he could stand or walk for up to two hours out of an eight-hour workday; and that he would be absent for work more than four times a month. In October, Dr. Heckman-Davis also wrote a note excusing Mr. Sells from jury duty because he was unable to sit or stand for over one hour. In her decision, the ALJ spent an entire paragraph recounting the opinions Dr. Heckman-Davis offered in these documents, but the entirety of her analysis as to the weight she attached to these opinions was as follows: "These opinions are granted little evidentiary weight as they are not supported by the physical examinations in the treatment history." (R. 28). Such a cursory explanation does not allow the Court to trace the ALJ's logic and meaningfully review the decision.

In addition, in addressing previous opinions by Dr. Heckman-Davis, the ALJ also gave them little weight because "the physical examination reflected only mild limitations in range or motion and sensation." (R. 27). However, Mr. Sells' limitations were caused primarily by pain when sitting or standing, and the ALJ offers no reason why that condition would be expected to cause greater limitations in his range of motion or sensation. Accordingly, the Court cannot find that the ALJ has met her burden of providing good reasons for discounting the various opinions offered by Mr. Sells' treating physician. That is not to say, however, that the ALJ could not offer other reasons for reaching the same conclusion. Accordingly, the proper remedy is to remand for further proceedings, so the Court rejects Mr. Sells' request for an outright award of benefits.

### IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: August 2, 2017

                                                /s/ JON E. DEGUILIO
Judge
United States District Court